1  IVAN VON STAICH
   E-10079 CW-137L
2  Central Training Facility
   P. O. Box 689
3  Soledad, Ca. 93960-0689

4  (Petitioner In Pro Se)

5            UNITED STATES DISTRICT COURT

6         NORTHERN DISTRICT OF CALIFORNIA

7            SAN FRANCISCO DIVISION

8                   * * *

9                          E-filing

10 IVAN VON STAICH,                    ) Case No. C08-0848 PJH
                                       )
11            Petitioner,              ) MOTION FOR EXPEDITED HEARING
                                       ) FOR SUMMARY JUDGMENT ON HABEAS
12     v.                              ) CORPUS PETITION UNDER 28 U.S.C.
                                       ) 2254 et seq;
13 Ben Curry, Warden, et al.,          )
                                       ) MEMORANDUM OF POINTS AND
14            Respondent.              ) AUTHORITIES IN SUPPORT OF
                                       ) SUMMARY JUDGMENT
15

16 TO: THE HONORABLE PRESIDING JUDGE **Phyllis J. Hamilton** OF THE
      ABOVE ENTITLED COURT, Please Take Notice:

17

18      Petitioner Ivan Von Staich, moves this Court to grant

19 summary judgment in favor of Petitioner based on the

20 Respondent's answer filed in accordance with this Court's

21 February 26, 2008, Order to Show Cause. The Respondent's answer

22 completely fails to present any persuasive argument or any

23 state or federal citation refuting the allegations set forth

24 in Ground One of Petitioner's federal petition, where the

25 Correctional Psychologist stated in his 2006 report, that

26 Petitioner' should be released on parole.

27      In addition, Petitioner asserts that Respondent's answer

28                    Page-1-Summary Judgment

FILED

MAY 1 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED

MAY 1 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1 completely fails to present any relevant argument supporting

2 the May 10, 2007 Board Commissioners use of 6 prison

3 disciplinary reports for violating the prison grooming standards

4 under Cal. Code Regs. tit. 15, §3062 subds. (M) and (N), which

5 was repealed based on **Warsoldier v. Woodford** 418 F.3d 989

6 (2005). Petitioner asserts that Respondent's answer completely

7 fails to present any argument explaining why the Board

8 Commissioners can use the disciplinary reports after Warsoldier.

9 In Petitioner's own civil rights case the Ninth Circuit stated

10 in their October 17, 2007 Memorandum under Docket No. 06-17026,

11 that only one of the six rule violation reports had been

12 removed. Id. at p. 8, fn. 3. Quite obvious, the Ninth Circuit

13 was explicitly stating that these disciplinary reports should

14 all be removed from Petitioner's C-File. Because the prison

15 officials at CTF-Soledad State Prison refused to remove all

16 the disciplinary reports after Warsoldier was well-established

17 law, they deliberately prejudiced Petitioner's case before

18 the Parole Board Commissioners and therefore, summary judgment

19 should be granted regarding the 2006 Correctional Psychologist

20 report and the illegal use of 6 non-violent grooming standard

21 rule violation reports.

22 Dated this ___ day of May, 2007.

23                              Respectfully Submitted,

24

25

26 IVAN VON STAICH
   Petitioner In Pro Se
27 Without Bar Licensed Counsel

                    Page-2-Summary Judgment

28

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT ON HABEAS CORPUS

Petitioner maintains that he is entitled to summary judgment under section 2254 Cases filed in the United States District Courts under Rule 11. Petitioner present in support of parole hearings being evaluated under Federal Rules of Civil Procedure, as stated in **Sprinkle v. Carey**, (E.D.Cal.) 2008 WL 564995*2-3, as follows:

### SUMMARY JUDGMENT APPLICABILITY

"The Rules Governing Section 2254 Cases in the United States District Courts establish that "[t]he Federal Rules of Civil Procedure, to the extent that are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules." Rule 11, Rules Governing §2254 Cases (emphasis added). Thus, summary judgment motions have been found appropriate in habeas corpus proceedings. **Blackledge v. Allison**, 431 U.S. 63, 80, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); **Clark v. Johnson**, 202 F.3d 760, 764-65 (5th Cir.2000) ("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."). The court is not bound in habeas proceedings, however, to "systematically apply traditional rules governing civil proceedings when to do so would be inconsistent with the overriding purpose of the federal habeas corpus statute." **Brown v. Vasquez**, 952 F.2d 1164, 1169 (9th Cir.1991). Nonetheless, the court finds this action appropriate for resolution by way of motion for summary judgment. The facts are not in dispute, there is no request or need for discovery and the underlying petition is fully briefed and stands submitted for decision.

### SUMMARY JUDGMENT STANDARDS

"*3 Normally in civil cases, summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)."

"Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue

Page-3-Summary Judgment

1  of material fact."

2  "**Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S.Ct. 2548,
   91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c). "[A]
3  complete failure of proof concerning an essential element of
   the nonmoving party's case necessarily renders all other facts
4  immaterial." Id.   In such a circumstance, summary judgment
   should be granted, "so long as whatever is before the district
5  court demonstrates that the entry of summary judgment, as set
   forth in 56(c), is satisfied." Id. at 323."
6
   "If the moving party meets its initial responsibility, the
7  burden then shifts to the opposing party to establish that
   a genuine issue as to any material fact actually does exist.
8  See **Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.**, 475
   U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).   In
9  attempting to establish the existence of this factual dispute,
   the opposing party may not rely upon the allegations or denials
10 of its pleadings but is required to tender evidence of specific
   facts in the from of affidavits and/or admissible discovery
11 material, in support of its contention that the dispute exists.
   See Fed.R.Civ.P. 56(e); **Matsushita**, 475 U.S. at 586 n. 11.
12 The opposing party must demonstrate that the fact in contention
   is material, i.e., a fact that might affect the outcome of
13 the suit under the governing law. See **Anderson v. Liberty Lobby
   Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);
14 **T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n**, 809
   F.2d 626, 630 (9th Cir.1987)."
15
   "Thus, summary judgment is appropriate in the typical civil
16 case when it is demonstrated that there exists no genuine issue
   as to any material fact, and that the moving party is entitled
17 to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also
   **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 157, 90 S.Ct. 1598,
18 26 L.Ed.2d 142 (1970); **Owens v. Local No.169**, 971 F.2d 347,
   355 (9th Cir.1992)." (See Exhibit "A" for reference to **Sprinkle
19 v. Carey**, (E.D.Cal. 2008) WL 564995 *2-3.)

20
        Petitioner argues that the May 10, 2007 parole hearing
21
   deprived him of his liberty interest without due process of
22
   law because the decision to deny parole for 4 years was not
23
   supported with any current evidence that Petitioner was a danger
24
   to public safety, and that the Board Commissioners did not
25
   present a shred of evidence refuting the assessments made in
26
   the 2006 Correctional Psychologist's report.     Further, the
27
                        Page-4-Summary Judgment
28

1 Board Commissioners or Respondent did not shows even "some
2 evidence" that currently Petitioner is a danger to public
3 safety, based on the 6 rule violation reports, written for
4 having hair over 3 inches, which is based on Petitioner's
5 religious beliefs as a Nazarite. (See Exhibit "B" for
6 Memorandum written by by the Deputy Director after the Ninth
7 Circuit Warsoldier decision, which ordered prison staff to
8 remove all old CDC 115 violation reports for violating the
9 prison grooming standards.) However, as we now know,
10 CTF-Soledad Officials refuse to remove the 6 violation reports,
11 and that the Board Commissioners relied on the series of rule
12 violation reports to help support their 4 year denial of parole.

13 Moreover, several federal courts have recognized the "no
14 specific fact" requirement, as set forth in **Felton v. Haris**
15 **Design & Const. Co.**, 417 F.Supp.2d 17, 20 (D.D.C.2006) ("In
16 addition, the nonmoving party may not rely solely on conclusory
17 statements, Greene v. Dalton, 164 F.3d 671, 675 (D.C.Cir.1999);
18 Harding v. Gray, 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the
19 nonmoving party must present specific facts that would enable
20 a reasonable jury to find in its favor. Greene, 164 F.3d at
21 675. If the evidence "is merely colorable or is not
22 significantly probative, summary judgment may be granted."
23 Anderson v. Liberently Lobby, Inc., 477 U.S. 242, 249-50, 106
24 S.Ct. 2505 (1986)).

25 Also, in the more recent case of **Anton v. Prospect Cafe**
26 **Milano,** (D.D.C.2007) WL 315360*2 ("A nonmoving party, however,
27 must establish more than "the mere existence of a scintilla

28 Page-5-Summary Judgment

1  of evidence" in support of its position. Id. at 252 [citation

2  omitted.]    To prevail on a motion for summary judgment, the

3  moving party must show that the nonmoving party "fail[ed] to

4  make a showing sufficient to establish the existence of an

5  element essential to that party's case, and on which the party

6  will bear the burden of proof at trial." Celotex, 477 U.S.

7  at 322.    "By pointing to the absence of evidence proffered

8  by the nonmoving party, may succeed on summary judgment."

9  quoting Celotex Corp., 477 U.S. at 323; and **Strine v. Sodus**

10 **Cent. School Dist.,** 403 F.Supp.2d 279, at 279 (W.D.N.Y.2005)

11 ("Rule 56(e) of the Federal Rules of Civil Procedure provides

12 that when a motion for summary judgment is made and supported

13 as provided in this rule, an adverse party may not rest upon

14 the mere allegations or denials of the adverse party's pleading,

15 but the adverse party's response, by affidavits or as other

16 provided in this rule, must set forth specific facts showing

17 that there is a genuine issue for trial.    If the adverse party

18 does not so respond summary judgment, if appropriate **shall**

19 be entered against the adverse party.") Id. at 279.    (See

20 Exhibit "C" for reference to Ninth Circuit Memorandum Remanding

21 Petitioner §1983 Complaint against CTF-Soledad Officials, and

22 that the rule violation reports should be removed.)

23                          CONCLUSION

24      Based on the relevant facts presented, and the fact that

25 Respondent has completely failed to present a shred of evidence

26 that the 2006 Correctional Psychologist's report should not

27 be followed, or that the series of grooming standards violation

28                  Page-6-Summary Judgment

1  reports show a present danger to public safety, therefore,

2  summary judgment must be granted.

3  Dated this $\underline{3^{rd}}$ day of May, 2008.

4                          Respectfully Submitted,

5

6

7                          IVAN VON STAICH
                            Petitioner In Pro Se
                            Without Bar Licensed Counsel

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                        Page-7-Summary Judgment

# EXHIBIT A

Slip Copy                                                                                                        Page 1
Slip Copy, 2008 WL 564995 (E.D.Cal.)
**(Cite as: Slip Copy)**

**Law Offices of Traci S. Mason**
**45 East Julian**
**San Jose, CA 95112**

Sprinkle v. Carey
E.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Freddie Carl SPRINKLE, Petitioner,
v.
Thomas L. CAREY, Respondent.
**No. CIV S-05-1783 MCE DAD P.**

Feb. 28, 2008.

Michael Satris, Margaret Joan Littlefield, Law Office of Michael Satris, Bolinas, CA, for Petitioner.
Robert C. Cross, Attorney General's Office for the State of California, Mary Jo Graves, California Department of Justice, Attorney Generals Office, Sacramento, CA, for Respondent.

*FINDINGS AND RECOMMENDATIONS*

DALE A. DROZD, United States Magistrate Judge.
*1 Petitioner is a state prisoner proceeding through counsel with an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges former Governor Davis' reversal of the 2002 decision by the California Board of Parole Hearings (hereinafter "Board") granting petitioner parole. In addition, petitioner challenges the Board's subsequent decisions in 2003 and 2004 finding him unsuitable for parole. Before the court is petitioner's motion for partial summary judgment in which he argues that the record contains no evidence supporting either Governor Davis' reversal or the Board's subsequent decisions. Respondent has filed an opposition. Petitioner has filed a reply.

**PROCEDURAL BACKGROUND**

Pursuant to a negotiated disposition, petitioner entered a plea of guilty to second-degree murder and was sentenced on August 29, 1987, in the Lassen County Superior Court to fifteen years to life in state prison.[FN1](Pet.Ex. A.) Petitioner entered the California Department of Corrections and Rehabilitation on September 1, 1987, to begin serving his term and became eligible for release on parole on December 16, 1996. (Pet'r's Mot. for Summ. J. at 5.)

> FN1. Petitioner alleges that at his trial the jury acquitted him of the first-degree murder charge and failed to reach a verdict on the lesser included offense of second-degree murder as well as on all other counts against him. (Pet. at 2.) Thereafter, he negotiated the plea that was eventually entered.

The circumstances of petitioner's offense of conviction are essentially as follows. In 1986, petitioner's wife had separated from him.[FN2]Petitioner saw his wife's truck parked on the roadside, drove up next to it to speak with her and discovered that she was with the victim, Don Pilger, who had previously stayed at the couples' home. Petitioner pointed a gun at Pilger and ordered him to get out of the car. The events that immediately followed were unclear but, as a result, petitioner shot Pilger in the head and killed him. Petitioner left the scene with his wife and his passenger. They drove towards Reno where petitioner eventually dropped off his wife and his passenger and turned himself in at a Reno police station. (*Id.*)

> FN2. Petitioner claims that the separation was unexpected and caused him to fall into an "emotional and physical nose-dive" in which he drank, used drugs and did not sleep. (Pet'r's Mot. for Summ. J. at 5.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In 2002, the Board unanimously found petitioner suitable parole. (Pet. at 12-13.) That same year, however, then-Governor Davis reversed the Board's decision. (Pet. at 13.) The Governor reasoned that petitioner demonstrated a wanton disregard for human suffering and caused great bodily injury. (*Id.* at 14.)In addition, the Governor explained that petitioner had been involved in a previous assault involving a firearm, anger and alcohol, in which he struck out at his girlfriend's father and fired a gun at her uncle. (*Id.*) Finally, the Governor expressed concern regarding petitioner's substance abuse, his continued assertion that the shooting which led to his conviction was accidental, and his ability to control his anger. (*Id.* at 14-15.)

In 2003 and 2004, the Board held parole hearings and found petitioner unsuitable for parole. (Pet'r's Mot. for Summ. J. at 11-12.) In 2003, the Board reasoned that petitioner carried out his offense in a rather uncaring and unfeeling manner and that his motive in committing the crime was inexplicable or very trivial in relationship to the offense. (*Id.*) In addition, the Board cited petitioner's previous assault involving a gun. (*Id.*) In 2004, the Board similarly reasoned that petitioner carried out his offense in an especially cruel and callous manner and his motive was inexplicable or very trivial. (*Id.* at 14.)In addition, the Board found that petitioner's offense involved multiple victims because his estranged wife was present when he shot Mr. Pilger. (*Id.*)

*2 On June 4, 2003, petitioner filed a habeas petition in the San Joaquin County Superior Court, challenging the Governor's reversal of the Board's 2002 parole grant on due process grounds. (Pet. at 3 .) The court denied the petition, holding that there was "some" evidence supporting the Governor's decision. (*Id.,* Attach.) The Superior Court cited the same reasons relied on by the Governor, including petitioner's wanton disregard for human suffering and the previous incident involving a gun. (*Id.*) Petitioner then sought habeas relief from the California Court of Appeal for the Third Appellate District. That court summarily denied his petition. (*Id.* at 3 & Attach.)

On February 24, 2003, petitioner filed a habeas petition with the California Supreme Court, challenging on due process grounds both the Governor's reversal of the Board's 2002 decision granting parole and the Board's 2003 decision denying him parole. (Pet. at 4.) On October 18, 2004, petitioner filed another habeas petition in the California Supreme Court, challenging the Board's 2004 decision denying him parole as violating due process. (*Id.*) On July 20, 2005, the California Supreme Court summarily denied petitioner's challenges to all three parole denials. (*Id.* at 3-4; Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. G.)

On September 7, 2005, petitioner filed the instant federal petition for writ of habeas corpus. On September 5, 2006, this court denied respondent's second amended motion to dismiss and ordered respondent to file a new response to the habeas petition. On November 2, 2006, respondent filed an answer. On December 4, 2006, petitioner filed a traverse. On March 15, 2007, petitioner filed a motion for partial summary judgment, arguing that the record contains no evidence supporting the Governor's 2002 reversal of the Board's decision granting him parole nor does any evidence support the Board's subsequent denials of parole in 2003 and 2004. On April 20, 2007, respondent filed an opposition to the motion. On April 30, 2007, petitioner filed a reply. On March 4, 2007, the undersigned heard oral arguments from the parties and took the matter under submission.

## SUMMARY JUDGMENT APPLICABILITY

The Rules Governing Section 2254 Cases in the United States District Courts establish that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, *may be applied, when appropriate,* to petitions filed under these rules."Rule 11, Rules Governing § 2254 Cases (emphasis added). Thus, summary judgment motions have been found appropriate in habeas corpus proceedings. *Blackledge v. Allison,* 431 U.S. 63, 80, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Clark v. Johnson,* 202 F.3d 760, 764-65 (5th Cir.2000) ("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force

Slip Copy                                                                                                     Page 3
Slip Copy, 2008 WL 564995 (E.D.Cal.)
(Cite as: Slip Copy)

in the context of habeas corpus cases."). The court is not bound in habeas proceedings, however, to "systematically apply traditional rules governing civil proceedings when to do so would be inconsistent with the overriding purpose of the federal habeas corpus statute."*Brown v. Vasquez*, 952 F.2d 1164, 1169 (9th Cir.1991). Nonetheless, the court finds this action appropriate for resolution by way of motion for summary judgment. The facts are not in dispute, there is no request or need for discovery and the underlying petition is fully briefed and stands submitted for decision.

## SUMMARY JUDGMENT STANDARDS

**\*3** Normally in civil cases, summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c))."[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."*Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."*Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material, in support of its contention that the dispute exists. See Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Thus, summary judgment is appropriate in the typical civil case when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Owens v. Local No. 169*, 971 F.2d 347, 355 (9th Cir.1992).

## THE ARGUMENTS OF THE PARTIES

I. *Petitioner's Motion*

Petitioner argues that former Governor Davis' reversal of the Board's 2002 decision granting him parole, as well as the Board's subsequent decisions in 2003 and 2004 finding him unsuitable for parole, deprived him of his liberty without due process of law because none of the decisions were based on sufficient evidence. (Pet'r's Mot. for Summ. J. at 3.) Petitioner asserts that the record reviewed by the state courts is before this court and constitutes the undisputed facts upon which this court can decide the pending motion for partial summary judgment. (*Id.*) He argues that this court may grant his motion if it finds that the state court decisions denying him habeas relief were contrary

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to or involved an unreasonable application of clearly established federal law and/or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. (Pet'r's Mot. for Summ. J. at 16.)

**\*4** Petitioner argues that a governor may reverse a parole grant only if he "reasonably believes that the gravity of the commitment offense indicates a continuing danger to the public safety" and there is "some evidence" to support that decision. (Pet'r's Mot. for Summ. J. at 16-17.) Petitioner maintains in this regard that "the sole basis for denying parole to a life prisoner in California is if there is evidence that reasonably supports the conclusion that he *currently* presents an unreasonable risk of danger to the public if released."(*Id.* at 17.)Specifically, petitioner argues that, under California law, an assessment of *present* dangerousness depends on post-offense developments. (*Id.*)

Petitioner contends that he was sentenced to fifteen years to life in prison, has served almost twenty-one years in prison and that twenty-two years have passed since he committed his offense. (*Id.*) He notes that the 2002 parole hearing marked his third such hearing and that he had served his minimum term of fifteen years in prison at the time of the former Governor's reversal of the Board's decision granting him parole. (*Id.*) Petitioner emphasizes that, unlike the petitioner in *Irons v. Carey,* 505 F.3d 846, 853-54 (9th Cir.2007), he had served his minimum term at the time of the Governor's reversal and had served more than his minimum term when the Board denied him parole in 2003 and 2004. (*Id.* at 19.)Petitioner contends he has also exhibited strong rehabilitation. (*Id.* at 19-20.)He argues that the state's conclusion that he presented an unreasonable risk of danger to the public if released in 2002, 2003 and 2004 lacks evidentiary support reasonably related to the conclusions reached. (*Id.* at 22.)

Petitioner takes issue with respondent's argument that his commitment offense provides "some evidence" to support the parole denials because, petitioner explains, respondent never articulates how the commitment offense in this case supports the parole denials. (*Id.* at 22-23.)Petitioner contends that the only possible link between the commitment offense and his present suitability for parole are statements by the Board and the former Governor suggesting that he has minimized, or not fully accepted responsibility for, his offense and his substance abuse or that he has not adequately addressed his anger and stress management issues. (Pet'r's Mot. for Summ. J. at 23.) However, petitioner argues that there is absolutely no evidence that he minimizes his offense conduct simply because he maintains that he did not intend to kill Mr. Pilger.(*Id.* at 23-24.)In addition, petitioner notes that he has not had a single disciplinary or counseling reprimand while incarcerated and has participated in AA, NA, and Straight Life. (*Id.* at 23.)Finally, petitioner points out that reports and psychiatric evaluations state that he has in fact developed the ability to deal with anger and stress and conclude that he would pose little to no risk to the public if released on parole. (*Id.*)

**\*5** Petitioner emphasizes that the underlying facts of his offense of commitment are static, occurred almost twenty-two years ago and will never change. (Pet'r's Mot. for Summ. J. at 25.) Petitioner concludes that nothing about his crime suggests that he currently presents an exceptional danger if paroled. (*Id.* at 26.)Accordingly, petitioner requests that the court grant his motion for partial summary judgment and grant him habeas relief. (*Id.* at 27.)

II. *Respondent's Opposition*

Respondent opposes petitioner's motion on both procedural and substantive grounds. First, respondent opposes the motion because petitioner failed to include a statement of undisputed facts with his motion for summary judgment as required by Local Rule 56-260(a). Respondent also complains about petitioner's attempt to expedite review of his habeas petition by moving for partial summary judgment, noting that in the pending motion counsel for petitioner has merely reiterated the arguments already contained in the previously filed petition and traverse. (Resp't's Opp'n to Pet'r's Mot. for Summ. J. at 2.)

Respondent also opposes the motion on the merits, arguing (1) petitioner's due process rights have not been violated;

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(2) the state court properly found that the Board's decision denying petitioner parole was supported by some
evidence; (3) the state courts properly rejected petitioner's argument that the Governor's reversal of the Board's
parole decision constituted an unlawful ex post facto application of the law; and (4) the Board's subsequent parole
decisions did not violate the Eighth Amendment's prohibition on cruel and unusual punishment.[FN3](Resp't's Opp'n to
Pet'r's Mot. for Summ. J. at 2.)

> FN3. Rather than providing opposition to the arguments advanced in petitioner's motion for summary
> judgment, respondent has elected to file the same memorandum and points and authorities that he filed with
> his answer to the petition. Accordingly, respondent has unnecessarily addressed petitioner's ex post facto
> and Eighth Amendment claims which are not raised by petitioner as grounds for granting summary
> judgment in his favor.

Respondent contends that this court should deny petitioner relief because the California Supreme Court's summary
denial of his habeas petition was a judgment on the merits that was not contrary to, nor involved an unreasonable
application of, clearly established federal law. (Resp't's Opp'n to Pet'r's Mot. for Summ. J. at 3.) Respondent asserts
that this state court decision is entitled to deference and was not contrary to clearly established federal law with
respect to the protections due inmates in the parole process since the Board afford petitioner the opportunity to be
heard and advised him of the reasons for the unsuitability finding. (*Id.* at 3-5.)Respondent also argues that even if
the denial of parole is required to meet the "some evidence" test as petitioner claims, the decisions here meet that
test. (*Id.* at 5.) Respondent points to the determination of the San Joaquin County Superior Court in which that court
explained:
[t]he Governor noted that this incident was not Petitioner's first incident involving guns, anger and alcohol. The
Governor added that he remains concerned over Petitioner's ability to control his anger, citing Petitioner's 1997
exclusion from the Straight Life program for being 'highly confrontational.' Thus, there is 'some' evidence, which
supports the Governor's decision.

*6 (*Id.* at 6.)

Respondent next contends that petitioner's commitment offense, shooting an innocent man in a jealous rage,
constitutes "some evidence" supporting the Governor's decision to deny him parole since there are elements present
in petitioner's offense that go beyond the minimum necessary to support his second degree murder conviction. (*Id.*)
In particular, respondent points to petitioner's trivial motive and asserts that multiple victims were harmed by
petitioner since his estranged wife witnessed the shooting. (*Id.*)[FN4]

> FN4. As noted, respondent advances two arguments addressing claims included in the pending petition but
> upon which petitioner has not sought summary judgment. (Resp't's Opp'n to Pet'r's Mot. for Summ. J. at 6.)
> First, respondent argues that the Board's decision to deny petitioner parole does not constitute an ex post
> facto application of law under the holding in *Johnson v. Gomez,* 92 F.3d 964 (9th Cir.1996).(*Id.*) Next,
> respondent argues that the denial of parole to petitioner does not violate the Eighth Amendment so long as
> his sentence does not exceed the statutory maximum. (*Id.*) These arguments need not be addressed by the
> court.

III. *Petitioner's Reply*

Petitioner maintains that proceeding by way of summary judgment is appropriate and that he has satisfied the
requirements of the local rules. He acknowledges that he filed this motion to obtain a speedy adjudication of his
claims but observes that the court's resolution of his claim that the decisions denying him parole are not supported
by "some evidence" will result in his release and conserve both judicial and fiscal resources. (Pet'r's Reply at 3.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Petitioner argues that respondent's due process arguments are completely misplaced. (Pet'r's Reply at 4.) In this regard, petitioner contends, respondent has confused an inmate's procedural due process rights at a parole hearing with the standards applicable to judicial review of parole decisions.(*Id.* at 5.) Here, petitioner contends that both state and federal law require that "some evidence" support a decision to deny a prisoner parole.(*Id.*)

Petitioner also reiterates that the state's continued reliance on dated offense conduct even after a prisoner has served the minimum number of years required by his sentence and demonstrates longstanding rehabilitation, may violate due process. (*Id.* at 7 .) Petitioner rebuffs respondent's argument that the decisions of the former Governor and the Board denying him parole properly relied upon a previous assaultive incident, the finding that he was confrontational while participating in the Straight Life Program while imprisoned, and the claim that the circumstances of his crime involved more than the minimum acts necessary to support his conviction for second-degree murder. (Pet'r's Reply at 8.) First, petitioner explains that the previous incident involving a gun referred to in the decisions occurred thirty-one years ago and that in the incident he was fired upon first. (*Id.*) Furthermore, petitioner argues it remains unclear whether he suffered any conviction stemming from this aged incident, but if he did, the most that was involved was a misdemeanor suspended sentence and that the matter was nowhere near the seriousness attributed to it by the state. (*Id.*) In addition, petitioner contends that his commitment offense did not involve "multiple victims" merely because it occurred in the presence of his estranged wife since there was no evidence that he pointed the gun at his wife or committed any offense against her at the time of the shooting. (*Id.* at 9.)

\*7 As to his motive for committing the crime, petitioner claims that his case is like others in which a husband has acted irrationally in killing his wife's boyfriend in anger. (*Id.* at 9-10.)Counsel contends on petitioner's behalf that, under these circumstances, the motive for the offense cannot be fairly characterized as either inexplicable or trivial. (*Id.*) Finally, petitioner contends that the Governor's concern regarding petitioner's ability to control his anger based on the cited incident during his participation in the Straight Life Program was not supported by some evidence. (*Id.* at 11.)Petitioner points out that he was reinstated to the program shortly after the incident, indicating that the decision to terminate him was ill-considered and that there was a valid explanation for what had occurred. (*Id.*)

## ANALYSIS

I. *Standard of Review Applicable to Habeas Corpus Claims*

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *See Peltier v. Wright,* 15 F.3d 860, 861 (9th Cir.1993); *Middleton v. Cupp,* 768 F.2d 1083, 1085 (9th Cir.1985) (citing *Engle v. Isaac,* 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Park v. California,* 202 F.3d 1146, 1149 (9th Cir.2000); *Middleton,* 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues *de novo. Milton v. Wainwright,* 407 U.S. 371, 377, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972).

Under 28 U.S.C. § 2254, the court cannot grant a writ of habeas corpus unless the state court's adjudication of petitioner's due process claim:
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

28 U.S.C. § 2254(d).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).*Himes v. Thompson,* 336 F.3d 848, 853 (9th Cir.2003); *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.*Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir.2003); *Pirtle v. Morgan,* 313 F.3d 1160, 1167 (9th Cir.2002).

In this case, the California Court of Appeal and the California Supreme Court summarily denied petitioner's habeas petitions challenging the 2002 reversal of the Board decision granting him parole. (Pet. at 3-4.) Similarly, the California Supreme Court summarily denied petitioner's habeas petition challenging the Board's subsequent 2003 and 2004 decisions to deny him parole.*(Id.* at 4-5.)The orders issued by each of these courts is "an unexplained order," i.e., "an order whose text or accompanying opinion does not disclose the reason for the judgment."*Ylst v. Nunnemaker,* 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). When confronted with a state court's unexplained order, the federal court applies the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."*Ylst,* 501 U.S. at 803. In applying this look-through presumption, unexplained orders are given no effect. *Id.* at 804.*See also Bains v. Cambra,* 204 F.3d 964, 970-71, 973-78 (9th Cir.2000) (holding that where the highest state court to reach the merits of a habeas petition issued a summary opinion that does not explain the rationale of its decision, federal court review under § 2254(d) is of the last explained state court opinion to reach the merits).

\*8 With respect to petitioner's challenge to the former Governor's 2002 reversal of the Board's decision to grant parole, the San Joaquin County Superior Court issued the only order setting forth reasons for denying habeas relief to petitioner. In light of the Superior Court's reasoned judgment, the court will look through the later unexplained California Court of Appeal and California Supreme Court decisions to analyze whether the reasoned state judgment was erroneous. *See Hayward v. Marshall,* 512 F.3d 536, 541 (9th Cir.2008).

With respect to petitioner's challenge to the subsequent denials of parole by the Board in 2003 and 2004, the California Supreme Court summarily denied petitioner's only habeas petitions challenging those decisions. As such, the court will conduct an "independent review of the record" to determine whether the state court's decision was objectively reasonable. *Himes,* 336 F.3d at 853;*Greene v. Lambert,* 288 F.3d 1081, 1088-89 (9th Cir.2002); *Delgado,* 223 F.3d at 981-82.

II. *Petitioner's 2002 Denial of Parole*

A. *Former Governor Davis' Reversal of the Board's 2002 Decision*

As noted above, in 2002 the Board granted petitioner parole but then-Governor Davis reversed the Board's decision. The Governor explained his rationale as follows:

Mr. Sprinkle demonstrated a wanton disregard for human suffering and caused great bodily injury. Mr. Sprinkle not only confronted Mr. Pilger while holding a loaded firearm, he went so far as to cock the gun. And Mr. Pilger was not his only victim. His act of violence caused trauma to Mrs. Sprinkle, who had to witness first hand, the death of her friend.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2008 WL 564995 (E.D.Cal.)
(Cite as: Slip Copy)

This was not Mr. Sprinkle's first assault involving guns, anger and alcohol. In 1976, he was arrested in Carson City, Nevada for felony coercion, kidnapping, battery with a deadly weapon, and assault with intent to commit murder. According to Mr. Sprinkle, he was very drunk when he got into an argument with his girlfriend and her family. He struck out at her father and fired a gun at her uncle. In the 1990 psychological evaluation, Mr. Sprinkle claimed that the charges were reduced to a simple assault. Although there is no official record, Mr. Sprinkle claimed that he received a six-month sentence, which was stayed.

I find it troubling that in his psychological evaluations, Mr. Sprinkle admits to using methamphetamine, cocaine and alcohol the day before his life crime, yet denies having a substance abuse problem. In 1998, the Board of Prison Terms recommended that he get more Alcoholics Anonymous and Narcotics Anonymous programming so he could demonstrate a greater knowledge of the 12-step program at the next parole suitability hearing. In 2000, the psychological evaluator noted that Mr. Sprinkle's "reentry to the free community must include abstinence from and monitoring of alcohol and drugs."Yet, I question Mr. Sprinkle's sincerity in addressing his substance abuse problems. At the 2002 parole suitability hearing, when asked why he attended Alcoholics Anonymous, he simply said, "the Board asked me to." I believe additional time should be spent in substance abuse programs to ensure that Mr. Sprinkle understands fully the need to maintain an alcohol and drug free lifestyle.

**\*9** Mr. Sprinkle's continued assertion that the shooting was accidental is also disconcerting. He pled guilty to second-degree murder not involuntary manslaughter. In the last psychological evaluation in 2000, the evaluator noted "there is an element of denial and rationalization" in Mr. Sprinkle's life. That denial has persisted. At the 2002 parole suitability hearing, Mr. Sprinkle testified that picking up that gun, "wasn't a conscious act ... I don't even remember picking it up."Equally disturbing is his inability to provide consistent details about the discharge of the gun. I view this as a failure to accept responsibility for his actions, which is an indication that he may still pose a risk to public safety if released at this time.

I am greatly concerned about Mr. Sprinkle's ability to control his anger given the impulsive nature of the life crime. In 2001, the Board of Prison Terms found Mr. Sprinkle unsuitable for parole because he "continues to be [an] unpredictable threat to others."Therapy was recommended to help him cope with stress in a nondestructive manner. As he testified at the 2002 hearing, he grabbed for a gun because he was "overcome by anger." Although he recognized that anger was the cause for the shooting, I am concerned that he has not had sufficient programming in anger management to develop and maintain coping skills. As recent as 1997, there was still some indication that he needed improvement. He was excluded from participation in the Straight Life Program for being "highly confrontational" with a guest. I believe Mr. Sprinkle would benefit from participation in anger management programs to help him learn how to control his anger.

The Lassen County District Attorney's Office is opposed to Mr. Sprinkle's parole. In a letter dated February 27, 2002, the District Attorney's Office stated, "we believe that Mr. Sprinkle would still pose an unpredictable threat to society."

I believe Mr. Sprinkle would benefit from additional incarceration and additional participation in substance abuse programs, anger management programs, self-help programs, and individual therapy. Without additional time spent in these areas, I believe Mr. Sprinkle continues to pose a significant risk of danger to public safety if released at this time. Accordingly, I REVERSE the Board of Prison Terms' decision to parole Mr. Sprinkle.

(Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. C.)

B. *State Court Review of Former-Governor Davis' Decision*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As noted above, petitioner filed a state habeas petition in the San Joaquin County Superior Court, challenging the Governor's reversal as a violation of due process. The Superior Court denied relief, explaining:

> In *In re Johnny Arafiles* (1992) 6 C.A.4th 1467, 8 Cal.Rptr.2d 492, the court concluded that the review authorized by section 8(b) and Penal Code section 3041.2 is confined to a reexamination and consideration of the administrative record before the BPT .... A habeas proceeding is in the nature of a collateral attack and [an order] that is collaterally attacked carries with it a presumption of regularity .... In the absence of such evidence, we must presume the Governor properly performed his review function within the constitutional and statutory framework. *Ibid @* 1478, 8 Cal.Rptr.2d 492. (internal quotations omitted)

> *10Title 15 of the California Code of Regulations, section 2402 provides the guidelines for parole consideration. Circumstances tending to show unsuitability are listed and include consideration of the commitment offense and whether the crime was committed in a heinous or cruel manner and whether the motive for the crime was trivial in relation to the offense. The importance attached to any circumstance or combination of circumstances "is left to the judgment of the panel" and in this case, the Governor.

> The record reflects that the Governor reversed the parole decision citing the fact that Petitioner "demonstrated wanton disregard for human suffering and caused great bodily injury."The Governor noted that this incident was not Petitioner's first incident involving guns, anger and alcohol. The Governor added that he remains concerned over Petitioner's ability to control his anger citing Petitioner's 1997 exclusion from the Straight Life program for being "highly confrontational."

> Thus, there is "some" evidence which supports the Governor's decision.

(Resp't's Answer, Ex. O.)

*C. Federal Habeas Review of State Parole Decisions*

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 459-60, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *McQuillion v. Duncan,* 306 F.3d 895, 900 (9th Cir.2002).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. *Board of Pardons v. Allen,* 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date even one that has been set. *Jago v. Van Curen,* 454 U.S. 14, 17-21, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."*McQuillion,* 306 F.3d at 901 (quoting *Greenholtz v. Inmates of Nebraska Penal,* 442 U.S. 1, 12, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). In this regard, it is clearly established that California's parole scheme gives rise to a cognizable liberty interest in release on parole even for prisoners who have not already been granted a parole date. *Hayward v. Marshall,* 512 F.3d 536, 542 (9th Cir.2008); *Sass v. Cal. Bd. of Prison Terms,* 461 F.3d 1123, 1128 (9th Cir.2006); *Biggs v. Terhune,* 334 F.3d 910, 914 (9th Cir.2003); *McQuillion,* 306 F.3d at 903. Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case violated due process.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*11** Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated."*Jancsek v. Oregon Bd. of Parole,* 833 F.2d 1389, 1390 (9th Cir.1987) (internal quotations and citation omitted). Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. *Id.* at 1390 (quoting *Greenholtz,* 442 U.S. at 16).*See also Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (describing the procedural process due in cases involving parole issues). Violation of state mandated procedures will constitute a due process violation only if the violation causes a fundamentally unfair result. *Estelle,* 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability. Cal.Penal Code § 3041; Cal.Code Regs. tit. 15, §§ 2401 & 2402. The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision."*McQuillion,* 306 F.3d at 904 (citing *Superintendent v. Hill,* 472 U.S. 445, 456, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)); *Powell v. Gomez,* 33 F.3d 39, 40 (9th Cir.1994) (citing *Perveler v. Estelle,* 974 F.2d 1132, 1134 (9th Cir.1992)). It is this "some evidence" standard that lies at the heart of petitioner's claims in this case and upon which he moves for summary judgment in his favor. For purposes of AEDPA, *Hill's* "some evidence" standard is "clearly established" federal law. *See Hayward,* 512 F.3d at 542;*Irons,* 505 F.3d at 851;*Sass,* 461 F.3d at 1129 (citing *Hill,* 472 U.S. at 456)."The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is any evidence in the record that could support the conclusion reached by the fact-finder. *Powell,* 33 F.3d at 40 (citing *Cato v. Rushen,* 824 F.2d 703, 705 (9th Cir.1987)); *Toussaint v. McCarthy,* 801 F.2d 1080, 1105 (9th Cir.1986). However, "the evidence underlying the board's decision must have some indicia of reliability."*Jancsek,* 833 F.2d at 1390. *See also Perveler,* 974 F.2d at 1134.[FN5]Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint,* 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached.*Id.*

> FN5. Under California law, the Governor must use the same factors as the Board when considering whether to reverse a grant of parole. *Hayward v. Marshall,* 512 F.3d 536, 542 (9th Cir.2008). Specifically, under California Penal Code § 3041(a), "a life prisoner shall be found unsuitable for parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."In reviewing this regulation, the Ninth Circuit has observed:

> "[t]he test is not whether some evidence supports the reasons the Governor cites for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety. Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers the public safety."

> *Hayward,* 512 F.3d at 543 (quoting *In re Lee,* 143 Cal.App.4th 1400, 1408, 49 Cal.Rptr.3d 931 (2006)).*See also Jancsek v. Or. Bd. of Parole,* 833 F.2d 1389, 1390 (9th Cir.1987) (due process is satisfied if some evidence supports the decision).

In recent years the Ninth Circuit Court of Appeals has been called upon to address these issues in four significant cases, each of which will be discussed below. First, in *Biggs* the Ninth Circuit recognized that a continued reliance on an unchanging factor such as the circumstances of the offense in denying parole could, at some point, result in a due process violation. 334 F.3d at 916-17.That holding has been acknowledged as representing the law of the circuit. *Irons v. Carey,* 505 F.3d 846, 853 (9th Cir.2007); *Sass,* 461 F.3d at 1129;*see also Hayward,* 512 F.3d at 545. While the court in *Biggs* rejected several of the reasons given by the Board for finding the petitioner unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from

Slip Copy                                                                                          Page 11
Slip Copy, 2008 WL 564995 (E.D.Cal.)
(Cite as: Slip Copy)

therapy. *Biggs, 334 F.3d at 913*. However, the court cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to that offense in denying parole could violate due process. In this regard, the court observed:

*12 As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest in parole.

*Id.* at 916.The court also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."*Id.* at 917.

In *Sass,* the Board had found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Relying on the decision in *Biggs,* the petitioner in *Sass* contended that reliance on these unchanging factors violated his right to due process. The court disagreed, concluding that in the case before it these factors amounted to "some evidence" to support the Board's determination. *Id.* at 1129.The court explained its holding as follows:

While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."*Biggs, 334 F.3d at 917* (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. *Cf. id.*The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

461 F.3d at 1129.

Subsequently, in *Irons* the Ninth Circuit sought to harmonize the holdings in *Biggs* and *Sass,* stating as follows:

Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in *Sass* precludes us from accepting Iron's due process argument or otherwise affirming the district court's grant of relief.

We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in *Biggs, Sass,* and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. *Biggs, 334 F.3d at 912;Sass,* 461 F.3d 1125.All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.

*13 Furthermore, we note that in *Sass* and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. *Biggs,* 334 F.3d at 917.

*Irons,* 505 F.3d at 853-54.

Finally, and most recently, in *Hayward,* the Ninth Circuit determined that under the circumstances of that case the unchanging factor of the gravity of the commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner's release would pose a continuing danger to society. *Hayward,* 512 F.3d at 546. The circumstances relied upon by the court to reach this conclusion in *Hayward* were the following: (1) the petitioner had served twenty-seven years in prison on a sentence of fifteen years to life; (2) the petitioner was sixty-four years old; (3) after eleven parole suitability hearings, the Board had twice recommended that the petitioner receive a parole date; (4) former California Governor Gray Davis reversed the Board's second grant of parole based on seven factors, four of which were unsupported by the record and three of which were based on unchanging circumstances; (5) the provocation for petitioner's crime was the attempted rape of his girlfriend (and future wife) by the victim; (6) the petitioner had solid parole plans, including several offers of employment and a place to live; and (7) the petitioner had an "exemplary" prison record for most of his period of incarceration, with his last major disciplinary violation taking place in 1989 and with only a minor disciplinary infraction in 1997. *Id.* Against this background the Ninth Circuit explained:

> In light of the extraordinary circumstances of this case-given the provocation for Hayward's violent crime in 1978, his incarceration for almost thirty years with his positive prison record in recent times, and the favorable discretionary decisions of the Board in successive hearings, which were reversed by the Governor on factual premises most of which were not documented in the record-we conclude that the unchanging factor of the gravity of Hayward's commitment offense had no predictive value regarding his suitability for parole. In the circumstances of this case, the Governor violated Hayward's due process rights by relying on that stale and static factor in reversing his parole grant.

*Hayward,* 512 F.3d at 546.

After taking into consideration the Ninth Circuit decisions in *Biggs, Sass, Irons,* and *Hayward,* and for the reasons set forth below, this court concludes that petitioner is entitled to federal habeas relief with respect to his challenge to then-Governor Davis' reversal of the Board's 2002 decision granting him parole.

### D. *Discussion*

**\*14** After carefully reviewing the record, this court concludes that the San Joaquin County Superior Court unreasonably applied the "some evidence" standard when it determined that the Governor's reversal of the Board's grant of parole was justified. No evidence in the record before this court supports a conclusion that petitioner's release would unreasonably endanger public safety. In this regard, this case presents just as strong a case for relief as did the petitioner in *Hayward.*

Here, petitioner is now sixty-three (63) years old and has served far more than the minimum number of years required by his sentence.[FN6]He committed his crime of second-degree murder (the same offense as the petitioner in *Hayward* ) decades ago under unusual circumstances and during a time of significant stress in his life according to the Board's 2002 findings. Specifically, after eight years of marriage petitioner's wife had separated from him five days prior to the shooting. Immediately after his wife left him, petitioner turned to drugs and alcohol in response to the pain of the separation and basically went without sleep for the four nights prior to the murder. On the day in question, petitioner saw his wife sitting in a parked truck with the victim, who had previously been a house guest of

he and his wife. In his altered state of mind, it seemed to petitioner that this was the root of the pain he was suffering, causing him to confront the victim with a gun he kept in his car. The confusing events that followed resulted in petitioner shooting and killing the victim. This confluence of circumstances are both unusual and extremely unlikely to recur in the remaining years of petitioner's life.[FN7]Petitioner has accepted responsibility for his crime and has shown remorse for it.[FN8]Petitioner has also demonstrated that he can be released without presenting a probable danger to society as evidenced by his virtually disciplinary-free prison record,[FN9] his above-average to exceptional work reports, his extensive involvement in vocational programs, his record of constant employment with Prison Industries since his imprisonment and his positive psychiatric evaluations. Moreover, petitioner's pre-offense background was very stable and included him earning both his GED and an Associate Arts Degree from San Jose City College, active duty with the United States Navy with an honorable discharge, steady employment and a long-term relationship with one Etta Maitland. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. B at 15-16, 45-51.) Petitioner also has a stable post-offense background, including his ongoing seventeen-year relationship with Ms. Maitland, financial support from and future residence with Ms. Maitland, an extensive network of family and friends supporting him, marketable skills, and employment offers from Reno Rebar, Tahoe Schooners, and Len's Air Conditioning. (*Id*. at 25-27.)[FN10]

> FN6. As noted, petitioner was sentenced to a term of fifteen years to life. Petitioner entered CDCR on September 1, 1987. At the time of then-Governor Davis' reversal, he had served just over fifteen years in state prison. He has now been imprisoned for over twenty years.

> FN7. Petitioner explained during the 2002 hearing: "the pain I was going through and because of the separation, you know, and it was emotionally hard for me, and it just came all out at that time. He was there with her and it seemed to me that that was the root of the pain that I was suffering.... [I]t seemed like my life was turned upside down right at that moment, and it just seemed like that there was the root."(Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. B at 6-7.)

> FN8. For example, during the 2002 parole hearing, the presiding parole commissioner asked petitioner with regard to his crime "You want to tell us about it, want to tell us why." Petitioner responded "Very bad choice. I just did some things that I shouldn't have done that day, and when I confronted him, it got out of hand. I wish with all my heart that I could change that day, but I can't. All I can say is I'm sorry. Sorry doesn't do it though. It's not just enough."(Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. B at 5-6.) Petitioner further noted "I made some bad choices and I know I made some bad choices. I could have done everything differently, and I wish I had of, but it's hindsight now and all I can say is that I'm sorry that it happened."(*Id.* at 6.)

> FN9. At the time of his 2002 parole hearing, petitioner had a classification score of zero, with but a single prison disciplinary violation for a work stoppage that took place back in 1994. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. B at 13-14.) In this regard, petitioner is even more disciplinary-free while in prison than was the petitioner in the *Hayward* case.

> FN10. Petitioner is certified as a journeyman electrician and a stationary engineer. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. B at 14.)

Then-Governor Davis based his reversal of the Board's decision on five factual findings that have no evidentiary support in the record or fail to demonstrate that petitioner would pose a danger to public safety if released from prison. First, the former Governor referenced petitioner's 1976 arrest in Carson City, Nevada, for felony coercion, kidnapping, battery with a deadly weapon, and assault with intent to commit murder. However, as the Governor recognized, "there is no official record" of any disposition of the arrest or charges brought nor is their a record of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

any conviction or sentence resulting from this dated incident. (Resp'n Opp'n to Pet'r's Mot. for Summ. J., Ex. C.) Apparently the matter began as a dispute between petitioner and his then-wife in which a members of his wife's family became involved, resulting in his wife's uncle shooting at him and petitioner firing back as he fled. (Resp't's Answer, Ex. C.) Petitioner recalls that as a result of the incident, at most, he pled to a misdemeanor simple assault charge and received a six-month sentence that was stayed in its entirety. Even if petitioner faced charges in connection with the matter, which again there is no record of, it occurred now more than thirty years ago. Just as in *Hayward*, this type of dated misconduct prior to the petitioner's offense of conviction does not support the Governor's conclusion that petitioner poses a threat to public safety today. As the Ninth Circuit has observed, "[i]t can hardly be doubted that time may attenuate the taint of certain prior misconduct."*Hayward*, 512 F.3d at 545-46. *See also Biggs*, 334 F.3d at 916 ("Over time, however, should [petitioner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole."); *Sass*, 461 F.3d at 127-28 ("continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation" (quoting *Biggs*, 334 F.3d at 917)).

**\*15** Former Governor Davis also mentioned petitioner's admission to using drugs and alcohol the day before committing his crime but his denial of having a substance abuse problem. This suggested criticism is not supported by the record which instead suggests that petitioner does not, in fact, have a chronic substance abuse problem. Since as early as 1993, well before he first became eligible for parole, petitioner's psychological reports consistently stated that "substance abuse does not appear to be a problem for this inmate," and that any substance abuse at the time of the commitment offense is "in sustained full remission." (Resp't's Answer, Ex. C (Psychological Reports dated Sept. 1, 1993, Sept. 1, 1995, Mar. 28, 1996, Apr. 21, 1998, Dec. 7, 2000)). Indeed, petitioner's drug abuse at the time of his offense was described by one staff psychologist as "situational and temporary" because there was no clear indication that he was previously involved in drug abuse. (*Id.,* Psychological Report dated Aug. 13, 1993). As noted above, in the few days immediately before the commission of his crime, petitioner found himself in circumstances involving significant emotional, mental and physical stress that are not likely to recur. Moreover, since his incarceration over twenty years ago, petitioner has not abused drugs or alcohol even though, as prison officials acknowledge, opportunities certainly exist within prison walls to engage in such activities.[FN11](Resp't's Answer, Ex. C.) Finally, while incarcerated, petitioner has completed an AA program and for nine years was involved in the Straight Life Program in which he counseled troubled youth about drugs and life choices, advocating complete abstinence from any drug or alcohol use. (*Id.,* Exs. B, C, & F.)

> FN11. As one prison staff psychologist noted in 2003 "It appears to this clinician that Mr. Sprinkle's risk to the community will remain low in comparison to most parolees or other citizens given that he remain[s] free from alcohol or substance abuse."(Resp't's Answer, Ex. C.)

Next, the Governor found disconcerting petitioner's continued assertion that the shooting of his victim was accidental, noting that petitioner had pleaded guilty to second-degree murder and not to involuntary manslaughter. The Governor also observed that in petitioner's last psychological evaluation in 2000, the evaluators noted that "there is an element of denial and rationalization" in Mr. Sprinkle's life. Former Governor Davis viewed this "element of denial and rationalization" as an indication that petitioner may still pose a risk to public safety and as a failure to accept responsibility for his actions. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. C.) However, the Governor's reliance on this isolated comment by the evaluators in reaching his conclusion was not well-supported. In the referenced report, the same evaluators expressly addressed petitioner's potential dangerousness, stating "As far as assessment of dangerousness in the community is concerned, in a state of sobriety, the Subject's violence potential is average for the general male population."(Resp't's Answer, Ex. C (Psychosocial Assessment dated Dec. 7, 2000).) Thus, even in light of the possible "element of denial and rationalization" in petitioner's life, the evaluators found his potential for violence average for the general male population. (*Id.*) Even more importantly, in

an addendum to this same report, the Chief Psychologist at Deuel Vocational Institution concluded as follows: "I find nothing prohibitive of the favorable consideration of parole since the Report to the Board of Prison Terms cited above."(*Id.,* Addendum dated Jan. 29, 2002.)

**\*16** To the extent that the former Governor believed petitioner had failed to accept responsibility for his actions, as noted above, there is no evidence in the record to support such a conclusion. Rather, the record demonstrates that petitioner understands both the nature and magnitude of his crime. Petitioner has repeatedly and genuinely accepted responsibility for his offense conduct and has demonstrated remorse for the loss of life that resulted from it.[FN12]

> FN12. Under Section 5011 of the California Penal Code, "The Board of Prison Terms shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate committed."Cal.Penal Code § 5011. Seemingly, the Governor also should not require such an admission of guilt before accepting a Board's decision to set a parole date. *See e.g., Hayward,* 512 F.3d at 542 ("Under California law, the Governor, in considering whether to reverse a grant of parole by the Board, must consider the same factors the Board is required to consider.")

The former Governor also expressed concern regarding petitioner's ability to control his anger given the impulsive nature of his offense of conviction. The Governor cited an instance in 1997 in which petitioner allegedly confronted a guest at the prison's Straight Life Program. Apparently, petitioner wanted to speak with one of the young men in attendance and held his arm to do so at which point a program supervisor told petitioner, "You can't touch the kid." (Resp't's Answer, Ex. C.) Based on the incident, petitioner was temporarily suspended from participation in the program but was later reinstated. (*Id.*) As noted above, prison psychological reports reflect that petitioner was involved in the Straight Life Program for nine years. (*Id.*) He has held the positions of executive secretary and under-secretary and had significant and time-consuming duties with respect to the operation of that program. (*Id.*) For example, he helped counsel troubled youths about drugs, gang activity and life choices on Saturdays and Mondays and participated in staff meetings on Tuesdays. (Resp't's Answer, Ex. C.) In addition, petitioner has received certificates of appreciation for his participation in that program. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. D at 23-24.) That prison officials reversed petitioner's suspension and allowed him to continue counseling young people demonstrates that he does not have an anger-management problem and would not pose an unreasonable risk of danger to the public if released. Finally, it is worth again emphasizing that petitioner has been essentially disciplinary-free throughout his twenty-plus year tenure in prison, and has virtually no pre-offense record of violence or anger management problems.

Finally, the former Governor found that petitioner demonstrated a wanton disregard for human suffering and caused great bodily injury when he confronted his victim with a loaded, cocked firearm in the presence of his estranged wife. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. C.) [FN13] Similar to the conclusion reached by the Ninth Circuit in *Hayward,* however, this court rejects the Governor's reliance on the gravity of petitioner's commitment offense to deny parole on this record. Given petitioner's rehabilitation, nearly impeccable conduct while in prison, and the Board's decision to release him on parole, the court finds that his commitment offense, which occurred now twenty-two years ago, does not demonstrate that his release will pose an imminent danger to public safety. Moreover, the court finds that under the circumstance presented by this case the former Governor's reliance on this "stale and static factor" to reverse the grant of parole violates petitioner's due process rights. *See Hayward,* 512 F.3d at 546-47;*cf. Irons,* 505 F.3d at 846 ("due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms").

> FN13. In reversing the Board's grant of parole former Governor Davis also cited the opposition to petitioner's release expressed in a letter by the Lassen County District Attorney's Office. However, "the district attorney's opinion, without more, cannot be considered 'some evidence' under *Hill* that supports the Governor's reversal of parole."*Hayward,* 512 F.3d at 545 n. 9.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*17** Under these circumstances, the court finds that the former Governor's reversal of the Board's grant of parole denied petitioner due process. Accordingly, the court concludes that petitioner's motion for partial summary judgment with respect to the former Governor's decision should be granted.

III. *Petitioner's 2003 Denial of Parole*

A. *Board's Decision*

After then-Governor Davis' reversal of the Board's 2002 decision granting parole, in 2003 the Board denied petitioner parole following a hearing. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. D.) The Board explained the rationale for its decision as follows:

    The Panel reviewed all the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to others or a threat to public safety. The offense was carried out in a rather uncaring and unfeeling manner. The offense was carried out in a manner that shows a total disregard for another human being and the motive for the crime was inexplicable or very trivial in relationship to the offense. These conclusions are drawn from the State of Facts wherein on 12-16-1986 the Lassen County Sheriff's Department received a call of a possible deceased body in a vehicle. They responded and they discovered the (inaudible) of the victim. The prisoner did not have much of a criminal history. However, he did have a previous history of violent kinds of behavior in which there's not much information on, but it involved what was allegedly a kidnap, battery and assault with a deadly weapon. Under unstable social history, there's no indication that the prisoner had an unstable social history. Under institutional program, the prisoner has programmed. A recent psychiatric report by Dr. Mary Young is a positive report. It shows that the prisoner's level of dangerousness in the community is greatly reduced and also his level of dangerousness in prison is also reduced. The prisoner have [sic] excellent parole plans to include residential and employment. The Hearing Panel notes that there was no notice-there was no opposition noted. The Panel makes the following findings: The prisoner needs to continue his positive program and also involve himself in self-help programs, the kinds of self-help programs that would help him deal with anger, and substance abuse related programs. Until enough progress is made in that area the prisoner continues to-well (inaudible) enable the prisoner to face, discuss, understand and cope with stress in a nondestructive manner. Until enough progress is (inaudible) necessary the prisoner continues to be unpredictable and a threat to others. Nevertheless, the prisoner should be commended for his good behavior. He should be commended for the skills that he's achieved and also for the excellent support-community support that he have [sic], to include the support of a former ambassador. However, those positive aspects of his behavior does [sic] not outweigh the factors for unsuitability. Parole is going to be denied for one year. The Panel recommend [sic] that you remain disciplinary-free and that you continue (inaudible) that you start to participate in self-help programs.

**\*18** (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. D at 66-68.)

B. *Discussion*

The court finds that the Board's 2003 decision denying parole is also unsupported by any evidence. Parroting the Governor's reversal, the Board in 2003 merely cited petitioner's commitment offense, the 1976 incident in Carson City, substance abuse, anger management and lack of self-help as the reasons for denying parole. As the Ninth Circuit maintained in *Hayward,*"California courts have made clear that the 'findings that are necessary to deem a prisoner unsuitable for parole are not that a particular factor or factors indicating unsuitability exist, but that a prisoner's release will unreasonably endanger public safety."512 F.3d at 543. For the reasons discussed above with respect to the Governor's 2002 reversal of the grant of parole, the court finds that the Board's 2003 decision has no

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

evidentiary support and that the factors cited therein fail to demonstrate that petitioner's release would pose a danger
to public safety.

Under these circumstances, the court finds that the Board's 2003 denial of parole violated petitioner's right to due
process. Accordingly, petitioner's motion for partial summary judgment with respect to the Board's denial of parole
in 2003 should be granted.

IV. *Petitioner's 2004 Denial of Parole*

A. *Board's Decision*

In 2004, the Board again denied petitioner's parole. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. E.) The Board
explained the rationale of its decision at that time as follows:

  Sir, we have reviewed all of the information that we received from the public and anything else that's been
  available today (indiscernible) and we relied on the following circumstances in concluding that you, the prisoner,
  are not still suitable for parole and would pose an unreasonable risk of danger to society or a threat to public
  safety if released from prison. The offense was carried out in an especially cruel and callous manner. There were
  multiple victims involved in that same incident. The motive was inexplicable or very trivial in relation to the
  offense. And these conclusions are drawn from the facts-from the State of Facts that we've reviewed today
  wherein the prisoner was drinking and abusing drugs prior to the (indiscernible) with (indiscernible). The inmate
  as he was passing by saw a car, where he found the victim and his wife. He was very angry and his life was falling
  apart. He had a loaded firearm, which he pointed at the victim. And he told us today that he shot the victim in the
  head, and the wife was in the car at that moment. He then drove away with his estranged wife, and at some point
  after driving away, he struck her in the face and did injure her. The prisoner has on previous occasions, inflicted
  or attempted to inflict serious injury on a victim. He has-I'm going to conclude that he has a record for violence
  from his own statement that he has a misdemeanor conviction. He has a history of unstable or tumultuous
  relationships with others. And that relates to the Carson City altercation that he had apparently with a girlfriend,
  her father, and an uncle. And with respect to the uncle, there's evidence, and that I believe he has testified in the
  past that he shot that uncle. There's an unstable social history and prior criminality, which includes the incident of
  July 10, 1976, involving similar acts of violence, including the use of a firearm in a case which resulted in at least
  a misdemeanor conviction arising from a criminal investigation of a felony coercion, kidnapping, battery
  (indiscernible). As I've already indicated, there was a conflict involving his girlfriend. He struck her father and
  fired a gun at the uncle. I have to tell you, Mr. Sprinkle, that I had a (indiscernible) time with your case today.

*19 (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. E.)

B. *Discussion*

The court also finds that the Board's 2004 decision to deny parole to be unsupported by any evidence. In that
decision the Board relied exclusively on unchangeable and dated factors, specifically, petitioner's offense of
commitment, the manner in which it was carried out, and a single incident that occurred prior to his offense.
Petitioner "cannot change the past" and denying him parole based solely on these immutable facts "effectively
changes his sentence" from fifteen years to life "into life imprisonment without the possibility of parole."*Martin v.
Marshall,* 431 F.Supp.2d 1038, 1046 (N.D.Cal.2006). The Board's 2004 decision relied solely on "stale and static
factor[s]" in violation of petitioner's due process rights and the factors cited therein fail to demonstrate that
petitioner would pose a danger to public safety if released from prison. *See Hayward,* 512 F.3d at 546-47.

Under these circumstances, the court finds that the Board's 2004 denial of parole resulted in a violation of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                     Page 18
Slip Copy, 2008 WL 564995 (E.D.Cal.)
(Cite as: Slip Copy)

petitioner's right to due process. Petitioner's motion for partial summary judgment with respect to his 2004 denial of parole should be granted.

## CONCLUSION

In sum, in light of the extraordinary facts of this case, including the unusual circumstances of petitioner's crime, his exemplary record of conduct in prison, his participation in self-help programs including AA, Straight Life Program, NA, and Creative Conflict Resolutions,[FN14] his viable parole plans, and the favorable Board decision in 2002 granting him parole, the court concludes that, under binding precedent, the challenged parole denials have violated petitioner's due process rights. The Governor's 2002 reversal and the Board's 2003 and 2004 denials are not supported by "some evidence" as constitutionally required. Accordingly, the court will recommend that petitioner's motion for partial summary judgment be granted, that his application for writ of habeas corpus be granted and that petitioner be released on parole.

> FN14. Petitioner was enrolled in both NA and Creative Conflict Resolutions at the time of his 2004 parole hearing. (Resp't's Opp'n to Pet'r's Mot. for Summ. J., Ex. E at 36-37, 60.)

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's March 15, 2007 motion for partial summary judgment be granted; and

2. Petitioner application for writ of habeas be granted and respondent be directed to release petitioner on parole within thirty (30) days of the date of entry of judgment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

E.D.Cal.,2008.
Sprinkle v. Carey
Slip Copy, 2008 WL 564995 (E.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

# Memorandum

cc : CDW's
AW's
Lit. Coor.
Appeals
Coor.
CPSM

Date  :  February 27, 2006

To  :  Associate Directors-Division of Adult Institutions
       Wardens

Subject :  **EMERGENCY REGULATIONS REGARDING INMATE GROOMING STANDARDS
AND ACCESS TO RELIGIOUS PROGRAMS**

Attached for your immediate use and implementation is a copy of the Notice of
Change to the Directors Rules (NCDR) Number 06/02 effective January 17, 2006.
The NCDR 06/02 modifies the California Code of Regulations (CCR) Section 3062
and authorizes inmates to wear their hair any length and/or wear short beards
(no longer than one-half inch) consistent with the policy as specified.

Therefore, any Rules Violation Report (RVR), California Department of Corrections
and Rehabilitation Form 115, written after January 17, 2006, for violating the prior
grooming standards (hair longer than 3 inches and/or having a beard shorter than
one-half inch) shall be voided upon written request by the inmate. This does not
apply to inmates whose noncompliance was wearing a beard longer than one-half
inch.

Inmates who were found guilty of grooming standard violations and placed on
program failure status prior to January 17, 2006, are to be removed from program
failure status effective January 17, 2006, upon written request as described in CCR
Section 3044 (unless otherwise ineligible based on disciplinary actions not related to
grooming standard violations). Except as provided for below or otherwise prohibited
(i.e., inmate housed in Administrative Segregation or Security Housing Unit for other
non-associated reasons), these inmates are to be placed on Work Group A2 and
placed on a waiting list.

Upon written request by the inmate, an inmate not in compliance with the grooming
standards based on previously stated religious beliefs and subsequently found guilty
of RVRs, are to receive full restoration of all credits lost for grooming standard
violations occurring on or after September 22, 2000. Inmates who were
subsequently placed on Work Group C status due to these RVRs, are to be returned
to their previously assigned Work Group status (i.e., original A1 or A2 unless
otherwise ineligible based on disciplinary actions not related to grooming standard
violations). Proof of noncompliance based on religious beliefs can include, but is not
limited to: documented statements at a disciplinary hearing; investigative employee
report; inmate appeal; classification chronological; other document maintained in the
inmate's Central File; or any other verifiable document (i.e., writ of habeas corpus or
court files).

Associate Directors-Division of Adult Institutions
Wardens
Page 2

Inmates who cannot verify their decision to violate the grooming standards based on religious beliefs shall not be entitled to have their Work Group status restored or have any unrestroable credit returned in conformance with CCR Sections 3327 or 3328 (Restoration process) for violations occurring prior to January 17, 2006.

In instances where eligible inmates have paroled prior to restoration of any of the above noted actions, upon the parolee's written request, Case Records staff shall restore credits and modify/correct Work Group credit earning assignments as described above and adjust the parolee's parole period as appropriate.

If you have any further questions, please contact Frank Lopez, Facility Captain, Standardization and Policy Liaison Unit, at (916) 323-4242.

JOHN DOVEY
Director
Division of Adult Institutions

Attachments

cc:  D. L. Runnels
     Brigid Hanson
     Kathleen Dickinson
     Frank Lopez

# EXHIBIT      C

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

**OCT 16 2007**

**CATHY A. CATTERSON, CLERK**
**U.S. COURT OF APPEALS**

| | |
|---|---|
| IVAN VON STAICH, | No. 04-16011 |
| Petitioner - Appellant, | D.C. No. CV-02-05305-PJH |
| v. | |
| JAMES HAMLET, Warden, | MEMORANDUM* |
| Respondent - Appellee. | |

| | |
|---|---|
| IVAN VON STAICH, | No. 06-17026 |
| Plaintiff - Appellant, | D.C. No. CV-04-02799-PJH |
| v. | |
| LINDA L. RIANDA; CHIEF INMATE APPEALS BRANCH THIRD LEVEL; A. TOMASETTI, CTF-Soledad Captain; J. L. CLANCY, Captain, | |
| Defendants - Appellees. | |

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted September 27, 2007[**]
San Francisco, California

Before: GIBSON[***],  TASHIMA, and BERZON, Circuit Judges.

Ivan Von Staich brings these consolidated appeals from dismissal of a

habeas claim and dismissal of a civil action for injunctive relief and damages under

42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and the Religious

Land Use and Institutionalized Persons Act ("RLUIPA").  We have jurisdiction

over his habeas appeal under 28 U.S.C. § 2253 and over his appeal from dismissal

of his civil action under 28 U.S.C. § 1291.  We affirm dismissal of plaintiff's

habeas petition.  We affirm dismissal of plaintiff's § 1983 claim and reverse

dismissal of his ADA claim.  We also reverse the district court's holding that Von

Staich's claim for injunctive relief under RLUIPA is moot, and remand to allow

plaintiff leave to amend his complaint.

---

[**]    Appeal No. 04-16011 was argued; however, Appeal No. 06-17026
was submitted for decision without oral argument pursuant to Fed. R. App. P.
34(a)(2).

[***]    The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

2

1.     Von Staich, an inmate of California state prison, is a Nazirite Christian and believes that his religion dictates that he not cut his hair or beard. Von Staich brought a petition for habeas corpus alleging that he was being punished for his religious beliefs in violation of RLUIPA because of his refusal to comply with prison grooming regulations. The district court dismissed his habeas petition as unexhausted and procedurally defaulted. On appeal, Von Staich does not contest the holdings that his petition was unexhausted and procedurally defaulted, but argues that the district court should have converted his habeas petition into an RLUIPA claim. Von Staich has, however, already filed a complaint and litigated a case alleging violation of RLUIPA on the same grounds contained in his habeas petition. As a result, his habeas appeal is moot and must be dismissed. *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (a court cannot grant any effectual relief and an appeal is moot where a plaintiff has already received all the relief he sought).

2.     Von Staich brought a civil action against officials of the California Department of Corrections under 42 U.S.C. § 1983, the ADA, and RLUIPA. After dismissing several other defendants from the suit, the district court dismissed the § 1983 claim against defendant Linda Rianda for failure to state a claim, dismissed Von Staich's claims for injunctive relief as moot because of changes in prison

3

regulations, dismissed his ADA claim as unexhausted, and held that Rianda was entitled to qualified immunity on the RLUIPA claim.

**a.**    The district court held that Von Staich failed to state a claim under 42 U.S.C. § 1983 for violation of his constitutional rights because there is no right to a particular administrative grievance procedure. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("there is no legitimate claim of entitlement to a grievance procedure"). Von Staich, however, does not allege that he was denied his right to bring an administrative appeal or that he was denied a particular administrative procedure. He alleges, rather, that Rianda's failure to provide him an exemption from the grooming regulations denied him his rights under the First Amendment of the Constitution.

Nonetheless, we affirm the dismissal of Von Staich's First Amendment cause of action. Prison hair-length and beard regulations do not violate the First Amendment. *See Henderson v. Terhune*, 379 F.3d 709, 715-16 (9th Cir. 2004) (California Department of Corrections hair-length restriction does not violate First Amendment); *Friedman v. Arizona*, 912 F.2d 328, 333 (9th Cir. 1990) (Arizona

4

prison regulation banning beards did not violate First Amendment). We therefore affirm dismissal of plaintiff's claims under 42 U.S.C. § 1983.

**b.** The district court erred in dismissing Von Staich's ADA claim for failure to exhaust.[1] The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their state administrative remedies before filing suit in federal court, and the exhaustion requirements of the PLRA apply to the ADA. *See* 42 U.S.C. § 1997(e)(a); *Butler v. Adams*, 397 F.3d 1181 (9th Cir. 2005) (applying PLRA exhaustion requirement to claim under the ADA). Defendants bear the burden of raising and proving non-exhaustion under the PLRA. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

As in *Wyatt*, the state has not carried its burden of proving non-exhaustion. The declarations provided by the state do not allege that Von Staich failed to exhaust his appeals. *Id.* Nor does the log of exhausted appeals demonstrate that none of the fourteen exhausted appeals listed was related to Von Staich's ADA claim. Although the district court is correct that Von Staich did not prove that he exhausted his ADA claim, Von Staich did not bear the burden of proving

---

[1] Von Staich does not mention his ADA claim in his opening brief on appeal. The defendants, however, raised the ADA claim in their response. As the plaintiff is pro se, we exercise our discretion to reach the claim. *See United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992).

5

exhaustion. We therefore reverse dismissal of plaintiff's ADA claim and remand for further proceedings.

**c.**     The district court dismissed Von Staich's claims for damages under RLUIPA as barred by qualified immunity, and his claims for injunctive relief under RLUIPA as moot.

Government officials are entitled to qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). *See Doe by and Through Doe v. Petaluma City Sch8 Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995) (applying qualified immunity analysis to alleged statutory violation of Title IX). At the time of Rianda's alleged actions, only seventeen federal court decisions had been issued citing RLUIPA. Only one case, *Toles v. Young*, 2002 WL 32591568 (W.D. Va. 2002), addressed prison grooming regulations, and it held that the regulations did not violate RLUIPA. *Id.* at *10. A reasonable official would thus not have had reason to know that failure to provide a religious exemption from prison grooming

6

regulations for either hair or beards violated RLUIPA. The district court's

dismissal of the damages claims is therefore affirmed.[2]

With regard to Von Staich's claims for injunctive relief under RLUIPA, a

case is moot when a plaintiff has received all of the relief he requested in his

complaint. *See NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065,

1068 (9th Cir. 2007) (holding that appeal was moot because other circumstances

had already provided plaintiffs "the relief sought by them in this case"). The

"party asserting mootness bears a 'heavy burden of establishing that there is no

effective relief remaining for a court to provide.'" *United States v. Strong*, 489

F.3d 1055, 1059 (9th Cir. 2007) (quoting *GATX/Airlog Co. v. U.S. Dist. Court*, 192

F.3d 1304, 1306 (9th Cir. 1999).

The district court dismissed Von Staich's claims for injunctive relief as moot

because the CDC adopted new regulations "which prevent[] future action against

plaintiff for over-long hair"; "prison authorities held a special classification

committee meeting in which plaintiff was retroactively returned to A-1-A status";

and "the rule violations report was 'removed' and good time restored." The record

---

[2] Von Staich also argues that the district court erred in dismissing his claims against defendant "A. Tomasetti" in his individual capacity for failure to achieve service within 120 days. Fed. R. Civ. P. 4(m). Any Rule 4 error, however, is harmless, because Tomasetti would also be entitled to qualified immunity for his actions.

7

shows, however, that only one of the six rule violation reports referred to by Von Staich in his complaint has been removed from his record.[3] Moreover, there is evidence in the record that Von Staich attempted to inform the court in two letters dated March 3 and March 8, 2006 that he continues to be punished under the new prison grooming regulations due to his long beard.

We therefore reverse the district court's dismissal of Von Staich's injunctive relief claims as moot, and remand to allow plaintiff leave to amend his complaint to allege ongoing punishment for his overlong beard. *See Verizon Del., Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (Federal Rule of Civil Procedure 15(a) embodies a "policy favoring liberal amendment"); *Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005) (noting that "leave to amend should be . . . granted more liberally to pro se plaintiffs") (*quoting Ramirez v. Galaza*. 334 F.3d 850, 861 (9th Cir. 2003)) (internal quotation marks and alterations omitted).

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED.**

---

[3] Von Staich attached six rule violation reports, dated May 17, 1998, June 28, 1998, September 14, 1998, October 23, 2001, November 12, 2001, and November 15, 2001, to his complaint and requested that defendants be ordered to "remove . . . all . . . rule violations concerning . . . violation of the prison grooming standards." The classification review document cited by the defendants in support of their claim that Von Staich has received all the relief he requested indicates that a single rule violation report dated November 15, 2001 was removed.

8

## PROOF OF SERVICE BY MAIL

(C.C.P. §§1013A, 2015.5)

STATE OF CALIFORNIA )
               ) SS.
<u>COUNTY OF MONTEREY</u> )

I, _____ **Ivan Von Staich** _____, am a resident of the State of California,

County of Monterey. I am over the age of 18 years and I   am/am not   a party to the within action.

My   business/residence   address is P.O. Box 689, Soledad, California, 93960-0689.

On ___ **M A Y** ___ **1 3** ___, 200**8** ___, I served the foregoing:

**Motion For Summary Judgment on Habeas Corpus**

on the parties listed below by placing a true copy thereof enclosed in a sealed envelope with postage

fully prepaid in the United States mail at Soledad, California, addressed as follows:

**Northern District Federal Court**
**450 Golden Gate Ave.,**
**San Francisco, Ca. 94102-3483**

**Attn: Filing Clerk for Hon. Judge Phyllis J. Hamilton**

**Office of The Attorney General**
**455 Golden Gate Ave., Suite 11000**
**San Francisco, Ca. 94102-7004**
      There is regular delivery service by the U.S. Postal Service between the place of mailing

and the places so addressed.

      I declare under the penalty of perjury under the laws of the State of California that the

foregoing is true and correct.

Executed this __1 3__ day of ___ **M A Y** ___, 200**8** ___, at

Soledad, California.

/S/ _____

**Declarant Ivan Von Staich**

Ivan Von Staich
E-10079 CW-137L
P.O. Box 689
Soledad, Ca. 93960

Honor
Phylli
450
San F

Confidential
**LEGAL MAIL**



able Judge:

s J. Hamilton
Golden Gate Ave.,
rancisco, Ca. 94102-3483