UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IVAN VON STAICH,

    Petitioner,

vs.

BEN CURRY, Warden,

    Respondents.

No. C 08-0848 PJH (PR)

**ORDER DENYING HABEAS PETITION**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The petition is directed to a denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. Petitioner also has filed several motions. For the reasons set forth below, the petition will be denied.

**BACKGROUND**

In May of 1986, petitioner was sentenced to an indeterminate term of seventeen years to life following his convictions by a jury in the Orange County Superior Court of second degree murder and attempted murder.

On May 9 and 10 of 2007, petitioner appeared before the Board of Parole Hearings for a hearing to determine whether he was suitable for release on parole. Petitioner waived his statutory right to counsel and elected to represent himself. Ex. 2 at 8.[1]

---

[1] Citations to "Ex." are to exhibits in the record filed with the court by respondent.

The Board summarized the facts of the commitment offense as follows:

> Based on the Appellate Decision in this case, starting at page two, and I will interweave those facts.
> A jury convicted Ivan Staich of second degree murder and attempted murder.  A firearm use allegation was found true as to the murder.  And a great bodily injury allegation was sustained as to the attempted murder in violation of Penal Code 664/187[.]  [T]he murder charge would have been PC, Penal Code, 187.  That was murder in the second degree.
> There was a prior felony conviction alleged on that information that bifurcated and heard separately and considered separately.  And as a result of that conviction in docket number C-53851, you received a sentence of 30 years to life for the violations I have noted, that your life term began on or about September 11th, 1983.  And that your minimum eligible parole date was September 11th, 2003.  And I'm just reading right out of the Appellate Decision.
> 'Staich's relationship with Cynthia Bess [the attempted murder victim], B-E-S-S, was interrupted in 1980 when he was convicted of a Federal offense and imprisoned in the Terminal Island Federal Penitentiary.  The pair communicated by telephone and mail until 1983.  Staich was released to a halfway house in Long Beach on June 9 of that year.  When Bess visited him there on several occasions, she was affectionate.  But in the meantime she had met Robert Topper, spelled T-O-P-P-E-R.
> 'And as her interest in,' and I'm going to just state this, paraphrase this for clearer understanding, as her interest in Topper grew, she less frequently communicated with Staich.  'He was returned to prison on June 29 after breaking into Bess' former residence in search of her and lost direct contact while serving the balance of his sentence.
> 'Frustrated with the uncertainty of the situation, Staich sent Bess letters in which he alternately professed his love and threatened to harm her if she left him for another man.  He made at least 67 collect telephone calls to Bess' father in July and August, 1983 in a fruitless effort to locate her.  He also telephoned Topper on numerous occasions and repeated[ly] threatened him, warning him to stay away from Bess.  He did not discover Bess' whereabouts during this time.
> 'Staich was released from Terminal Island on November 4, 1983 and learned the victim was staying at her grandparents' home[,] [a]lthough he was apparently unaware that she had married Topper.  In the early morning hours of December 8, 1983 Staich went to the grandparents' house armed with a hammer.  He cut the telephone wires to the residence and then kicked in the front door.
> 'Topper was brutally slain.  Numerous hammer blows were inflicted to Topper's head[,] [a]nd he was shot four times at close range in the back of the neck.  Bess survived multiple blows, probably with a handgun to her head.  Her skull was crushed, however.  And the resulting brain damage left her incompetent to testify.  Staich himself was shot once or twice[,] suffering wounds to a hand and arm and ribcage.  He went to a nearby home for help.'

Ex. 2 (hearing transcript) at 18-20.

The Board determined that petitioner was not suitable for parole and denied parole for four years.  *Id.* at 79-95.

///

2

**DISCUSSION**

**I.     Standard of Review**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ.  *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d

1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## II.   Issues Presented

Among other things, respondent contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will be addressed first.

### A.   Respondent's Contentions

In order to preserve the issues for appeal respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. *See Irons v. Carey*, 505 F.3d 846, 851-52 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128-29 (9th Cir. 2006) (the some evidence standard identified in *Hill* is

clearly established federal law in the parole context for purposes of § 2254(d)); *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole.").

### B.     Petitioner's Claims

Petitioner contends that (1) the Board of Parole Hearings' decision violated due process in that it was the product of bias and was arbitrary and capricious, as shown by the Board's refusal to consider the favorable psychologist's report; (2) the Board did not allow petitioner court-ordered sentence credits; (3) the Board's action amounted to an enhancement of his sentence from a sentence for second-degree murder to one for first-degree murder, without the facts leading to this change having been tried to a jury and proved beyond a reasonable doubt, allegedly a violation of *Blakely v. Washington*, 542 U.S. 296 (2004), and *Cunningham v. California*, 127 S. Ct. 856 (2007); (4) the Board's use of old misconduct reports and misconduct reports given him for following his religious beliefs as the basis for concluding that his next parole hearing should not be for four years was a violation of his due process rights; (5) the Board's giving petitioner a four-year denial (his next hearing will not be for four years) was not supported by "some evidence," hence violated due process and was ex post facto; and (6) his due process rights were violated by the Board's acting as if it were a second jury and, in essence, finding him guilty of first rather than second degree murder.

#### 1.     Bias

In his first issue petitioner contends, among other things, that the Board failed to give proper consideration to a psychological report, illegally gave a copy of the psychological report to the Assistant District Attorney who appeared at the hearing, and rendered an arbitrary decision. There is no constitutional requirement that a parole board give any particular level of consideration to evidence before it, nor that it refrain from giving a psychological report to the prosecutor. At most, these might be state law claims, which are not grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the

5

interpretation or application of state law).

Petitioner's contentions in this claim that the Board's decision was the product of bias against him, was retaliatory, and was not supported by "some evidence," arguably are federal claims.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record," *Sass*, 461 F.3d at 1128-29, or is "otherwise arbitrary," *Hill*, 472 U.S. at 457. *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007). Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal. *Sass*, 461 F.3d at 1129.

It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In re Lawrence*, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

Petitioner was denied parole based on the egregious nature of the offense, his prior criminal record, his disciplinary history, his unstable social history, and his insufficient participation in prison self-help programs. Ex. 2 at 81-84, 86-88, 90.

The facts of the offense are set out on page two, above. The nature of the offense was one basis for the Board's conclusion that petitioner would be a danger to society if paroled. At the time of the hearing in 2007 petitioner was approximately fifty-one years old and had served a bit more than twenty-four years on his sentence of thirty years to life. This significant passage of time certainly reduces the evidentiary value of the offense itself,

but the court concludes that the exceptionally gruesome and vicious circumstances of the offense are entitled to significant weight; whether they would be enough in themselves to constitute "some evidence" need not be resolved, because the denial also is supported by other evidence. There was evidence in the record that petitioner had an extensive record of disciplinary violations in prison, although the last significant one was eight years before the hearing; that in view of his attitude, his participation in self-help programs was inadequate, particularly with regard to violence against women; and most notably, that his contrition was unconvincing and that he lacked any real insight into what he had done. *Id.* at 30-31, 29, 85-86, 89, 90-91, 93-95. In short, there was "some evidence" to support the denial.

In this claim petitioner also asserts, as he does in several other claims, that the Board was biased against him and that the denial was in retaliation for his success in obtaining a court order requiring them to hold the hearing at issue. There is no evidence whatever as to the retaliation claim. As to bias, the record shows that the Board reviewed the evidence extensively and discussed it with petitioner. Ex. 4 at 18-64. The Board's decision explains the facts it relied upon in finding him not suitable for parole. *Id.* at 79-95. Both these factors tend to negate the accusation of bias, and petitioner has not provided any evidence that would show otherwise. He also has provided nothing but speculation that the denial was retaliatory.

The state courts' rejection of these claims was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

**2. Sentence Credits**

Petitioner contends that the Board denied him sentencing credits to which he is entitled. He does not explain how the Board, which was only considering whether he was suitable for parole, would be involved with calculating sentence credits, and in any event the state courts' rejection of this claim establishes that he is not entitled to the credit under state law. Because the state courts' rulings on matters of state law are binding on this court, *see Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), the predicate of petitioner's claim

has not been established, i.e., he has not been deprived of any credits to which he is entitled. This claim is without merit.

### 3. Apprendi/Blakely Claim

Petitioner claims that the Board's action amounted to an enhancement of his sentence from a sentence for second-degree murder to one for first-degree murder, without the facts leading to this change having been tried to a jury and proved beyond a reasonable doubt, allegedly a violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Cunningham v. California*, 127 S. Ct. 856 (2007).

The rule from *Apprendi* and its progeny is that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [than the statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California*, 127 S. Ct. 856, 863-64 (2007). The relevant statutory maximum "'is not the maximum sentence a judge may impose after finding additional fact, but the maximum he may impose *without* any additional findings." *Id.* at 860 (quoting *Blakely v. Washington*, 542 U.S. 296 303-04 (2004)).

The *Blakely* court explained that the *Apprendi* rationale does not apply to indeterminate sentencing within the permitted sentence range. *See Blakely*, 542 U.S. at 309 ("Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence – and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned."). That is, the heart of the analysis is whether the statutory scheme *requires* that a certain sentence be imposed upon the finding of certain facts.

In California, for persons sentenced to a term of years to life, as petitioner was, the sentence is a life sentence until he or she is found suitable for parole. *See Dannenberg*, 34 Cal. 4th at 1083-84 ("an inmate whose offense was so serious as to warrant, at the outset,

a maximum term of life in prison, may be denied parole during whatever time the Board deems required for 'this individual' by 'consideration of the public safety.'" (quoting Cal. Penal Code § 3041(b) (emphasis in original)).  And although there are regulations applicable to the parole board's decision whether to find an inmate suitable for parole, those regulations "are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." Cal. Code Regs., tit. 15, § 2402 (c), (d)).  That is, the regulations do not require a particular outcome when a particular fact or facts are found, which is the required predicate for application of the *Apprendi/Blakely* rule.  Because petitioner does not have a legal right to a lesser sentence when particular facts are found, *see Blakely*, 542 U.S. at 309, the *Apprendi/Blakely* rule is inapplicable and this claim is without merit.

### 4.   Setting Next Parole Hearing

The Board concluded that petitioner's next parole hearing would be in four years, on grounds that it was unreasonable to expect he would be paroled any sooner than that.  Ex. 2 at 91.  He asserts this was improper because it was based on old and nonviolent disciplinary convictions and on disciplinary violations of grooming standards, and, in his claim five, that it was not supported by "some evidence."  It is clear from the Board's decision that the decision not to hold another hearing for four years was based on much more than just petitioner's disciplinary record, but also on the factors listed above for the parole denial itself, including the nature of the crime and petitioner's patent lack of remorse. Ex. 91-93.  And in any event there is no constitutional right to a hearing in any particular number of years, or a constitutional restriction on the basis for a decision regarding the next hearing; the only constitutional requirements established by the United States Supreme Court, and which thus could be the basis for relief here, are a right to be heard and a right to be informed of the basis for the denial, *Greenholtz v. Nebraska*, 442 U.S. 1, 16 (1979), and a right to a decision based on "some evidence," *Sass*, 461 F.3d at 1128-29.

This claim is without merit.

### 5.   First Degree Murder Sentence

9

Petitioner contends that he has "been illegally resentenced to life in prison." He is incorrect, however; under California law, all years-to-life sentences – such as petitioner's – are in fact life sentences until parole is granted. *See Dannenberg*, 34 Cal. 4th at 1083-84 ("an inmate whose offense was so serious as to warrant, at the outset, a maximum term of life in prison, may be denied parole during whatever time the Board deems required for 'this individual' by 'consideration of the public safety.'" (quoting Cal. Penal Code § 3041(b) (emphasis in original)). Because a life sentence was proper under California law, there was no due process violation in failing to release petitioner. And to whatever extent petitioner may be trying to claim in this issue that his constitutional rights were violated by the Board's failure to apply the sentence matrices contained in its regulations, the Board is under no such duty when it has determined that a prisoner is unsuitable for parole. *Dannenberg*, 34 Cal. 4th at 1071. This claim is without merit.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. Pending motions for bail (document number 12 on the docket), an expedited ruling (document 20), and transfer to the central district (document 22) are **DENIED** as moot. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 10, 2010.

PHYLLIS J. HAMILTON
United States District Judge

P:\PRO-SE\PJH\HC.08\STAICH848.RUL.wpd